**Penny E. HARRINGTON, Plaintiff,**

v.

**CITY OF PORTLAND; J.E. (Bud) Clark; Sidney I. Lezak; John C. Beatty, Jr.; H.D. Watson; Raymond M. Tercek; Michael McPhee; and Charles Karl, Defendants.**

**Civ. No. 87–516–FR.**

United States District Court, D. Oregon.

Oct. 23, 1987.

Tom Steenson, Steenson, Fontana, Schumann & Ellis, Portland, Or., Linda K. Eyerman, Gaylord, Thomas & Eyerman, Portland, Or., for plaintiff.

Harry Auerbach, Deputy City Atty., Portland, Or., for defendants City of Portland and J.E. (Bud) Clark.

Don H. Marmaduke, Barbee B. Lyon, Tonkon, Torp, Galen, Marmaduke & Booth, Portland, Or., for defendants Sidney I. Lezak, John C. Beatty, Jr., and H.D. Watson.

John C. Ray, Thompson, Adams, DeBast & Ray, Beaverton, Or., for defendant Raymond M. Tercek.

Anna J. Brown, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant Michael McPhee.

John Folawn, Holmes, DeFrancq & Schulte, P.C., Portland, Or., for defendant Charles Karl.

## OPINION

FRYE, District Judge:

In the matters before the court:

1. Defendants Raymond M. Tercek and Charles Karl move to dismiss plaintiff, Penny E. Harrington's, first claim for relief; and

2. Defendants Sidney I. Lezak, John C. Beatty, and H.D. Watson move to dismiss Harrington's third claim for relief; and

3. Defendants City of Portland and Mayor J.E. (Bud) Clark move to dismiss Harrington's second, third, fourth and fifth claims for relief.

Harrington seeks to recover damages under the following claims for relief:

First claim for relief against defendants Tercek, McPhee and Karl: Deprivation of First and Fourteenth Amendment rights under the United States Constitution. (42 U.S.C. § 1983).

Second claim for relief against defendants City of Portland and Mayor Clark: Deprivation of the right to equal protection under the laws and the denial of the right to procedural due process. (42 U.S.C. § 1983).

Third claim for relief against defendants City of Portland, Mayor Clark, Lezak, Beatty and Watson: Deprivation of the right to procedural due process. (42 U.S.C. § 1983).

Fourth claim for relief against defendants City of Portland and Mayor Clark: Breach of contract.

Fifth claim for relief against defendant City of Portland: Claim for payment of attorney fees and costs.

All defendants, with the exception of Portland Police Officer McPhee, move the court to dismiss Harrington's complaint pursuant to Fed.R.Civ.P. 12(b) on the ground that it fails to state a claim. The court will grant such a motion only where it appears to a certainty under existing law that no relief can be granted under any set of facts. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The issue is not whether Harrington is likely to succeed on the merits, but whether she is entitled to proceed beyond the threshhold in attempting to establish her claims. *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978). Further, in deciding the motion to dismiss, the allegations of the complaint must be construed in her favor.

## ALLEGATIONS OF THE COMPLAINT

In the preliminary statement to her complaint for damages, Harrington alleges as follows:

1. Plaintiff, Penny E. Harrington, was Portland's Chief of Police from January 24, 1985 to June 1, 1986. During her tenure, Plaintiff was faced with difficult decisions; and her actions, although publicly supported by the Mayor, were heavily criticized by certain factions within the law enforcement community including the Portland Police Association (PPA) through its President, Stan Peters, and the Northwest Organized Crime Drug Enforcement Task Force (Task Force). Because she was the first woman Chief of Police, Plaintiff was the focus of an unprecedented amount of media attention; and as a consequence, Plaintiff's critics also received an unprecedented amount of media attention.

2. On March 27, 1986, in order to appease the small but vocal minority whose criticisms were being regularly reported as "news," the Mayor established a Special Review Commission which over the next two months conducted a public investigation of Plaintiff's family, her associations and her administrative decisions.

3. The establishment of a Special Review Commission was an unprecedented action. No other Chief of Police has ever been forced to defend his family, his associations and his administrative decisions in a public forum; and Plaintiff would not have been subjected to such an investigation, had Plaintiff not been the first woman Chief of Police. Such action violated Plaintiff's constitutional rights to due process and equal protection un-

der the laws and to be free from unlawful discrimination because of her sex.

4. In addition, the Special Review Commission would not have been established if certain Portland police officers who were members of the Task Force had not conspired to accuse Plaintiff's husband of compromising their investigation of Robert (Bobby) Lee, a local restaurant owner, by disclosing to Lee that he was a drug suspect. This accusation was false and was made for purposes of discrediting Plaintiff and having her removed as Chief of Police. Such action violated Plaintiff's constitutional rights to due process of law and to be free from the use of unlawful means, under color of law, to remove her as Chief of Police.

5. During the investigation by the Special Review Commission, Plaintiff's constitutional right to due process of law was further violated when the Special Review Commission, without notice to Plaintiff, expanded its investigation and heard testimony, often in secret, about matters which were outside the scope of the authority given to the Special Review Commission by the Mayor. For example, it was only when the Special Review Commission issued its Final Report recommending Plaintiff's removal as Chief of Police that Plaintiff learned that her entire administration was at issue and her entire career at stake.

6. As a result of the establishment of and proceedings before the Special Review Commission, Plaintiff was publicly discredited; and upon receipt of the Special Review Commission Final Report, the Mayor removed Plaintiff as Chief of Police.

7. At the time the Mayor removed Plaintiff as Chief of Police, he recognized the damage which the Special Review Commission had caused to Plaintiff, and he recognized the fact that Plaintiff could no longer work as a Police Captain in the Portland Police Bureau and command those who had been encouraged to come forward and criticize her. The Mayor therefore agreed to provide Plaintiff with a pension which would allow her to retire early from the Portland Police Bureau. The Mayor then breached this agreement by failing and refusing to provide Plaintiff with an early retirement pension.

## FIRST CLAIM FOR RELIEF

■ Harrington's first claim for relief is against police officers Tercek, McPhee and Karl. Tercek and Karl move the court to dismiss Harrington's first claim for relief against them on the ground that it fails to state a claim for which relief can be granted.

The complaint alleges the following facts relevant to Harrington's claims against Tercek and Karl:

that Tercek, McPhee and Karl, as co-defendants and co-conspirators, accused Harrington's husband of compromising a Task Force drug investigation by telling Bobby Lee that he was a suspect;

that Tercek, McPhee and Karl knew that Lee knew from another source that he was a suspect in the Task Force drug investigation many months before his contact with Harrington's husband;

that Tercek, McPhee and Karl, individually and in conspiracy with each other, agreed to withhold this information and to claim that Harrington's husband had compromised the investigation so as to publicly discredit Harrington and cause her to be removed as Chief of Police;

that as a result of this conduct, Mayor Clark ordered the Special Review Commission to investigate Harrington's husband's conduct, to review Harrington's administrative decision to reorganize the Drug and Vice Division of the Portland Police Bureau, and to review Harrington's association with Bobby Lee;

that the Special Review Commission heard testimony and received testimony from Tercek, McPhee and Karl who continued to withhold knowledge and to accuse Harrington's husband; and

that as a result of the conspiracy by Tercek, McPhee and Karl, Harrington was publicly discredited and suffered a deprivation of her right to continue as Chief of Police and to continue her career as a Police Captain.

Tercek and Karl argue that Harrington's claim against them should be dismissed because she has failed to allege facts sufficient to show that they were the proximate cause of her alleged injuries. Their argument is that if Harrington was deprived of any federal constitutional right, the proximate cause of such deprivation was, as a matter of law, the flawed procedures used in the process of terminating her employment as Chief of Police rather than their wrongful acts or perjured testimony.

Harrington argues that even though Tercek and Karl did not know exactly how their improper actions would cause her injury, they accomplished their intended result and should be held responsible for the injury caused by their intentional wrong-doing.

Under section 1983, any person who subjects another person or causes that other person to be subjected to a deprivation of federal constitutional rights is liable in damages to that person. Therefore, Harrington must establish that Tercek and Karl caused her to be deprived of a federal constitutional right. She can do this by showing that Tercek and Karl personally participated in causing the deprivation, or that they caused another to deprive her of her constitutional right.

In *Arnold v. Intern. Business Machines*, 637 F.2d 1350 (9th Cir.1981), the court explained:

The causation requirement of sections 1983 and 1985 is not satisfied by a showing of mere causation in fact. *See* W. Prosser, Law of Torts § 41 at 238–39 (4th ed. 1971). Rather, the plaintiff must establish proximate or legal causation. In *Hoffman v. Halden*, 268 F.2d 280 (9th Cir.1959), *overruled in part on other grounds, Cohen v. Norris*, 300 F.2d 24 (9th Cir.1962), we examined the allegations of a deprivation of civil rights arising out of the plaintiff's commitment to a mental institution by court order. We observed that the proximate cause of the plaintiff's injury would ordinarily be the court order, and not the various steps preliminary to the court order. *Hoffman v. Halden, supra*, 268 F.2d at 296. Without the preliminary steps, no court order could have issued, and no commitment could have occurred. Thus, the preliminary steps were a cause in fact of the commitment. Because the defendants in the case were persons involved in those preliminary steps, we had to determine, in reviewing the trial court's dismissal for failure to state a cause of action, whether the plaintiff had alleged facts sufficient to raise those preliminary steps to the level of proximate cause. *Id.*

In a more recent case, we said:

A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which complaint is made.... Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir.1978) (emphasis added). The standard for causation stated in *Johnson v. Duffy, supra*, is more than that of causation in fact. The statement closely resembles the standard "foreseeability" formulation of proximate cause. *See* Prosser, *supra*, § 43. *Cf. Beard v. Mitchell*, 604 F.2d 485, 496 (7th Cir.1979) (approving district court's proximate cause instruction in a *Bivens* case).

637 F.2d at 1355.

In her complaint, Harrington alleges that she was deprived of her right to be free from sex discrimination by the City of Portland and Mayor Clark and her right to due process of law by the City of Portland, Mayor Clark, and Lezak, Beatty and Watson as members of the Special Review Commission. Harrington seeks to hold

Tercek and Karl liable because she claims they set in motion a series of acts which they could have foreseen would result in sex discrimination and denial of due process of law.

Without deciding whether or not the actions of Tercek and Karl as pleaded constitute the proximate cause of Harrington's demise as Police Chief, these actions as pleaded do not constitute the proximate cause of the alleged sex discrimination by Mayor Clark or the alleged deprivation of due process of law by Lezak, Beatty and Watson. There is no allegation that Tercek or Karl knew or should have known that Harrington would be discriminated against because of her sex by a Mayor who appointed her to the position in the first place or denied due process of law by a committee of distinguished citizens.

Tercek and Karl's motion to dismiss Harrington's first claim as to them is granted. The court need not address the other arguments that Tercek and Karl make in support of their motion.

### SECOND CLAIM FOR RELIEF

In her second claim for relief under 42 U.S.C. § 1983, Harrington alleges that the City of Portland and Mayor Clark deprived her of her constitutional right to the equal protection of the law (sex discrimination) and her constitutional right to substantive due process of law under the Fourteenth Amendment to the United States Constitution.

The complaint alleges the following facts relevant to Harrington's second claim for relief against the City of Portland and Mayor Clark:

that because Harrington was a woman who had been appointed Chief of Police in a major city, she received unprecedented publicity;

that because she received unprecedented publicity, so did her detractors;

that because her detractors received unprecedented publicity, Mayor Clark made an unprecedented number of public statements supporting her;

that ultimately, however, in order to appease her detractors, Mayor Clark, without precedent, appointed a Special Review Commission: 1) to investigate her administrative decision to reorganize the Drug and Vice Division of the Portland Police Bureau; and 2) to investigate Harrington and her husband's association with Bobby Lee, a suspected drug trafficker;

that a public investigation would never have occurred had she not been a woman;

that a public investigation of a male Chief of Police had never been conducted before;

that the City of Portland has a history of discrimination against women in the Police Bureau; and

that she has been scrutinized more closely and judged by different and more stringent standards than men by Mayor Clark and by the City of Portland.

*Equal Protection of the Law (Sex Discrimination)*

■ In essence, the governmental action that Harrington alleges was sex discrimination was the establishment of the Special Review Commission and the public hearing it conducted. Undisputably, Mayor Clark had the right to appoint such a commission under section 2–403 of the Charter of the City of Portland. His charge to the Special Review Commission included the charge to investigate certain activities of Harrington and her husband with regard to Bobby Lee, the suspected drug trafficker, as well as to investigate Harrington's controversial administrative decision regarding the Drug and Vice Division.

The City of Portland and Mayor Clark point out that they are ultimately responsible for the integrity of and public confidence in the Portland Police Bureau, and that when questions were raised about Harrington and her husband's activities with Bobby Lee, it was unrealistic to conduct an internal investigation within the Portland Police Bureau because the internal investigators would have had to report to Harrington herself. The City of Portland and Mayor Clark argue that as a matter of law an independent investigation by a Special Review Commission was necessary and appropriate and was therefore lawful and non-discriminatory.

In determining whether Harrington has adequately stated a claim for sex discrimination, the court must look at the totality of the relevant facts pleaded in the light most favorable to Harrington. Harrington has alleged that the City of Portland has a documented history of discrimination against women in the Portland Police Bureau. She alleges a *de facto* pattern and practice of discriminating on the basis of sex against women employed in the Portland Police Bureau. She alleges that because she is a woman, Mayor Clark established a Special Review Commission to review actions taken by her as Chief of Police and to review her personal associations thereby subjecting her to more scrutiny than male Chiefs of Police and thereby judging her by a different and extraordinary standard.

Mayor Clark has the power to establish a Special Review Commission under the terms of the Portland City Charter, and he can use this power selectively. He cannot, however, use this power if his reason for using it is the sex of the individual selected for review. The issue before this court is not whether Harrington is likely to succeed on the merits of her case, but whether she is entitled to proceed beyond this motion to dismiss. The court cannot say as a matter of law at this stage in the proceedings that she can prove no set of facts that may entitle her to prevail in her claim of sex discrimination. The court finds that Harrington is entitled to proceed beyond this motion to dismiss based upon the allegations of her complaint.

*Substantive Due Process of Law*

██ As to Harrington's claim of a violation of substantive due process of law under 42 U.S.C. § 1983, the court must determine whether Harrington has pled facts from which she may be entitled to prevail. In *Rutherford v. City of Berkeley*, 780 F.2d 1444 (9th Cir.1986), the court determined that the plaintiff had adequately stated a claim for a violation of substantive due process of law under 42 U.S.C. § 1983 when he alleged an unprovoked assault and battery on him by police officers who placed him in custody by throwing him on the ground and repeatedly punching and kicking him. The court discussed the standard for a violation of substantive due process as follows:

> The Supreme Court outlined the nature of a substantive due process claim in the police brutality context in *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin*, the Court reversed a conviction based on evidence obtained by subjecting the petitioner to a stomach pump in violation of his substantive due process rights. *Id.* at 174, 72 S.Ct. at 210. The *Rochin* Court reasoned that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." 342 U.S. at 169, 72 S.Ct. at 208. The Court did not articulate specific standards for identifying what constitutes a substantive due process violation but concluded that it lies where government conduct "shocks the conscience" or constitutes force that is "brutal" and offends "even hardened sensibilities." *Id.* at 172–73, 72 S.Ct. at 209–10. Following *Rochin*, the seminal case of *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973), developed more definite standards for identifying substantive due process violations. Noting that violations that give rise to a substantive due process claim are necessarily more egregious than those that give rise to simple tort actions, Judge Friendly wrote that
>
> > in determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. *Id.* at 1033.

780 F.2d at 1446.

The facts upon which a substantive due process claim rests must be so egregious as to "shock[ ] the conscience" and "offend

those canons of decency and fairness which express the notions of justice of English-speaking peoples...." *Rochin v. California,* 342 U.S. at 169, 172, 72 S.Ct. at 208, 209. The court finds that as a matter of law the allegations of sex discrimination in Harrington's complaint do not meet this standard. Therefore, Harrington's claim that she was denied substantive due process of law will be dismissed.

*Qualified Immunity for Mayor Clark*

Assuming without agreeing that Harrington has stated a claim against him for a violation of her right to the equal protection of the law (sex discrimination), Mayor Clark contends that the claim should be dismissed because he is entitled to qualified immunity.

Mayor Clark is entitled to qualified immunity if in light of existing law and the information known to him at the time of his actions he could not have reasonably anticipated that his conduct might give rise to liability for damages. *See Davis v. Scherer,* 468 U.S. 183, 195, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1985); *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

As to Harrington's claim of the denial of the equal protection of the law (sex discrimination), she must first prove that Mayor Clark established the Special Review Commission because she is a woman. If she establishes this fact, Clark, the Mayor of a major city in the United States, is not entitled to the defense of qualified immunity because he could have reasonably anticipated that his conduct might give rise to liability for damages. If she fails to prove this fact, Mayor Clark prevails on the merits. Mayor Clark's motion to dismiss Harrington's claims based on qualified immunity is denied.

## THIRD CLAIM FOR RELIEF

Harrington brings her third claim for relief against the City of Portland, Mayor Clark, and Lezak, Beatty and Watson as members of the Special Review Commission. She charges them with violations of her constitutional right to procedural due process. Harrington argues that these defendants failed to provide the procedural due process safeguards to which she was entitled during the hearings before the Special Review Commission.

The complaint alleges the following facts relevant to Harrington's procedural due process claim against Lezak, Beatty and Watson:

that they individually and jointly exceeded the bounds of their authority by expanding the scope of the Special Review Commission to issues which were outside their charge;

that they failed to notify Harrington that they had expanded the scope of the Special Review Commission;

that they failed to notify Harrington when they were going to take secret testimony, and failed to permit her to attend, to know the identity of the witnesses, or to review the substance of the secret testimony;

that they failed to permit her to cross-examine witnesses;

that they made general findings and a recommendation concerning Harrington, all of which were beyond the scope of the authority of the Special Review Commission;

that she had a reasonable expectation that she would continue to serve as Chief of Police as long as Clark was Mayor, but that as a direct result of the acts and conduct of Lezak, Beatty and Watson, Mayor Clark removed her as Chief of Police;

that while serving as Chief of Police, she was considered to be on approved leave of absence from her permanent position as Police Captain;

that she had a right, following her service as Chief of Police, to continue to work as a Police Captain in the Portland Police Bureau; and

that in determining the type of notice and procedures to be used in connection with the Special Review Commission, Clark, Lezak, Beatty and Watson acted as decision-makers for the City of Portland, and they thereby created a *de facto* policy, pattern, practice or custom of the City of

Portland of providing inadequate procedural safeguards in such situations.

Lezak, Beatty and Watson and Mayor Clark and the City of Portland argue that Harrington has no property or liberty interest in being Chief of Police and was not entitled to due process of law.

*Property Interest*

Harrington claims two related, but independent, property rights: 1) the reasonable expectation that she would continue as Chief of Police as long as Mayor Clark was Mayor of the City of Portland; and 2) the right, following her service as Chief of Police, to continue to work as a Police Captain in the Portland Police Bureau.

Lezak, Beatty and Watson and Mayor Clark and the City of Portland argue that section 4–101 of the Charter of the City of Portland, which provides that the Chief of Police is "subject to removal by the Mayor," absolutely precludes Harrington from claiming any property interest in her employment as Chief of Police. Lezak, Beatty and Watson and Mayor Clark and the City of Portland assert that in the absence of a statute or contract to the contrary, Harrington was an "at will" employee and Mayor Clark was entitled to discharge her at any time and for any cause with no due process afforded to her.

Harrington argues that she was not an "at will" employee because she gained a property interest in her employment as Chief of Police through an implied contract. To support her theory of an implied contract, Harrington alleges in her complaint that as a result of the unprecedented amount of media attention being focused upon her, Mayor Clark made repeated public statements in support of her as Chief of Police, and that as a result of these statements, she had a reasonable expectation that she would continue to serve as Chief of Police as long as Clark was Mayor.

■ A property interest in employment can be created by ordinance or by implied contract. *Bishop v. Wood*, 426 U.S. 341, 345, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). To determine whether Harrington possessed a property interest in her employment, the court must look to state law, including the Charter of the City of Portland. *See Canfield v. Sullivan*, 774 F.2d 1466, 1467 (9th Cir.1985).

The relevant section of the Charter of the City of Portland is section 4–101, which provides in part that "[t]he Mayor shall appoint a Chief of Police, who shall have had ten (10) years of active police service. The Chief of Police shall be subject to removal by the Mayor." The Charter of the City of Portland provides in no uncertain terms that the Chief of Police serves at the pleasure of the Mayor and is removable at will. Nonetheless, Harrington asserts that Mayor Clark altered the terms of the City Charter through an implied contract with her not to discharge her during his term as Mayor without affording her procedural due process—that is, without good cause and an opportunity to be heard. Harrington's complaint alleges that public statements of support made by Clark upon which she relied amount to an implied contract on the part of Mayor Clark and the City of Portland not to discharge her without procedural due process.

Assuming without deciding that the complaint alleges an implied contract, the court must decide whether Mayor Clark could legally enter into a contract with Harrington—explicit or implied—which restricts the free exercise of the discretion vested in him by the Portland City Charter to remove the Chief of Police at will.

■ A public officer must always guard and protect the interests of the public and is not at liberty to encumber the public powers given to him through the use of private contracts at the expense of the public. A public official who has the authority to appoint another to a position cannot encumber that power at the expense of the public. In *Hall v. Pierce*, 210 Or. 98, 307 P.2d 292 (1957), a newly elected Congressman allegedly entered into a contract with his wife to appoint her as his secretary. In discussing the legality of the contract, the court cited to the principle stated in 42 Am.Jr., Public Officers § 84, p. 945, as follows:

A public office is not property, but the mere right to exercise a public function. It is not the subject of sale, purchase, or

encumbrance, and cannot be acquired in any such manner; nor can the unearned salary or compensation of a public officer ordinarily be sold or assigned.

A public office should be conferred solely upon consideration of ability, integrity, fidelity, and fitness for the position, and it is the duty of a public officer having the power of appointment to make the best appointment in his power. Consequently he should not be deprived of the exercise of his best judgment by any contract previously made or obligation previously assumed.

The court in *Hall* concluded that the alleged agreement, if made, would have been illegal. The court found that "[t]he power possessed by a public officer must always be exercised for the public good exclusively." 210 Or. at 116, 307 P.2d 292. The *Hall* court concluded that the power of appointment or removal can never become entangled with financial ventures of the officer and the appointee, and that the alleged agreement would have been illegal and unenforceable.

 The alleged implied contract between Harrington and Mayor Clark is for the private good of Harrington and not for the public good exclusively. The alleged implied contract between Harrington and Mayor Clark would encumber the power of removal at will vested in Mayor Clark by the City Charter. The City Charter specifically gives Mayor Clark the discretion to remove the Chief of Police as he sees fit for the public good, unrestricted by the protections of procedural due process. If, as Harrington alleges, Mayor Clark altered his power through an implied contract with her, such a contract would be unenforceable by Harrington. Public officers may not make agreements with others which restrain their public actions or their freedom to make discretionary decisions exclusively for the good of the public. Harrington could not acquire by an implied contract with Mayor Clark any property interest in her job as Chief of Police.[1]

 Harrington also claims that she has a property interest in her continued employment as Police Captain. She does not allege that any of the defendants in this action have prevented her from returning to her position as Police Captain. What she alleges is that she was publicly discredited as a result of the defendants' conduct and thereby rendered unable to work as Police Captain. In her brief, Harrington admits that she retains her position as Police Captain although she is not presently working in that capacity.

Harrington's claim of an injury to her property right to continue employment as Police Captain rests exclusively upon her claim that she was injured by defendants' deprivation of due process in removing her as Chief of Police. Since the court has determined that Harrington suffered no compensable constitutional injury resulting from her removal as Chief of Police, the acts of defendants were not the legal cause of Harrington's inability to work as Police Captain. Assuming without deciding that Harrington has a property interest in her continuing employment as Police Captain, the court finds that these defendants have not deprived her of such an interest.

Since the court has determined that Harrington had no property interest in her position as Chief of Police, her contention that members of the Special Review Commission—Lezak, Beatty and Watson—denied her due process of law is rendered moot.

*Liberty Interest*

 Harrington charges that she was publicly discredited by Mayor Clark and the Special Review Commission. When a person's good name, reputation, honor or integrity is at stake, the right to liberty is implicated and deserves constitutional scrutiny. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). In order to state a claim for deprivation of a liberty

---

1. Each case in which an employee claims entitlement to a property interest in continued employment is unique on its facts and must be evaluated according to its merits. In consideration of the facts in this case, the court is influenced primarily by the nature and public status of the positions of Mayor and Chief of Police and the specific intention of the City Council to vest in Mayor Clark the unrestricted discretion to remove the Chief of Police.

interest of constitutional magnitude, the charges made against Harrington by Clark must have surpassed subjects relating to incompetence or the inability to get along with others or lack of judgment and trust. The charges must constitute accusations of moral turpitude such as dishonesty or immorality. *See Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 365–66 (9th Cir.1976).

█ Harrington has alleged that she was "publicly discredited" by the charges made against her in the process of her dismissal as Chief of Police. However, the charges she alleges the defendants made against her relate exclusively to incompetence, the inability to get along with others, or lack of judgment or trust. The facts Harrington pleads in support of this allegation are not adequate to implicate a liberty interest of federal constitutional magnitude.

**FOURTH CLAIM FOR RELIEF**

In her fourth claim for relief, Harrington alleges that she and Mayor Clark entered into an agreement whereby she would retire from the Portland Police Bureau, and in return the City of Portland would provide her with an early retirement pension. Harrington alleges that the City of Portland and Mayor Clark breached this agreement by failing to provide her with an early retirement pension.

The City of Portland and Mayor Clark move to dismiss this claim on the ground that the alleged agreement, if made, is not an enforceable agreement. The City of Portland and Mayor Clark rely upon section 8–104 of the Charter of the City of Portland, which provides that "[t]he City of Portland shall not be bound by any contract nor in any way be liable thereon, unless the same is authorized by an ordinance and made in writing and signed by some person or persons duly authorized by the council...." The City of Portland and Mayor Clark assert that the alleged agreement was not in writing, was not authorized by an ordinance or signed by a person duly authorized by the City Council to sign such agreement and as such cannot constitute a valid contract. The City of Portland

and Mayor Clark also argue that even if the breach of contract claim is valid, Harrington's claim for emotional damages should be dismissed.

Harrington argues that Mayor Clark had the authority to bind the City of Portland since he is its Mayor, and that section 8–104 of the City Charter relates to advertising and construction contracts and not to a contract involving the terms and conditions of a classified employee's removal as Chief of Police and resignation from the classified civil service. Harrington also points out that section 8–104 contains a provision waiving a writing "when work ... [is] necessary for an emergency involving public health and safety" which she argues can be applied to her. Harrington asserts that Mayor Clark is authorized to bind the City of Portland in a manner such as this by at least two ordinances: 1) section 4–101, which expressly authorizes the Mayor to appoint and remove the Chief of Police, and 2) section 2–302, which gives the City Commissioner in charge of the Police Department (here Mayor Clark) the supervision and control of all affairs and property belonging to the department.

The arguments of the parties are not adequate for the court to resolve this motion. The Clerk of the Court is directed to contact counsel and set up a briefing schedule for further consideration of Harrington's fourth claim for relief.

**FIFTH CLAIM FOR RELIEF**

█ In her fifth claim for relief against the City of Portland, Harrington asserts that she is entitled to recover attorney fees and costs incurred in matters relating to the Special Review Commission. She relies on the common law theories of indemnification and implied contract. She cites section 3.10.030 of the Portland City Code which she claims provides a duty on the City of Portland to defend her, or in the alternative, to provide payment of her attorney fees when a conflict of interest arises on the part of the City Attorney.

Section 3.10.030 of the City Code is set out in its entirety as follows:

**3.10.030 Duties.** (Amended by Ord. No. 156711; Oct. 25, 1984.) The City Attorney shall have the following duties:

(1) *Appear for, represent, and defend the City, and its boards, commissions, bureaus, officers, and employees and other persons entitled to representation under the Oregon Tort Claims Act in all appropriate legal matters,* except legal matters involving individuals who, after investigation by the Bureau of Risk Management, are found by the Bureau to have been acting outside the scope of their employment or duties or committing malfeasance in office or willful or wanton neglect of duty, and except as otherwise directed by the Council or the Charter;

(2) Review and approve as to form all written contracts, bonds, or other legally binding instruments to which the City is a party;

(3) Give legal advice and opinions orally and in writing and prepare documents and ordinances concerning any matter in which the City is interested when required by the Mayor, any Council member, the City Council, or board, bureau, committee, commission, or agency of the City, or when required by any other person authorized by resolution of the Council to obtain advice and opinions of the City Attorney;

(4) Submit to the Council, annually as of the first day of January, a report of all suits or actions in which the City is a party. The report shall state the name of each pending suit or action and a brief description of the suit or action and of the status of the suit or action at the date of the report. The report shall also state the name of each suit or action closed during the preceding calendar year and a brief description of the suit or action and the disposition of the suit or action including the amount of any money paid by the City;

(5) (Amended by Ord. No. 156711 Oct. 25, 1984.) Institute legal proceedings for the City in any court or tribunal on direction by resolution of the Council, except that the City Attorney may upon approval of the Commissioner In Charge and for good cause shown seek enforcement of any regulation or license requirement including the payment of any fee, penalty, or interest, established by Charter, Code, ordinance, or statute, and collection of any account receivable and may assert a counterclaim, a cross-claim, or a third party claim.

Upon close reading of the ordinance, the court cannot identify any duty on the part of the City of Portland to represent Harrington before the Special Review Commission or to pay the legal fees she incurred in being represented by an attorney at the hearings before the Special Review Commission. Harrington's complaint does not allege sufficiently a cause of action for indemnification for legal fees expended or a cause of action for an implied contract to pay for legal fees. Defendants' motion to dismiss plaintiff's fifth claim for relief is granted.

## CONCLUSION

1. Defendants Tercek and Karl's motion to dismiss Harrington's first claim for relief is granted.

2. Defendants the City of Portland and Mayor Clark's motion to dismiss Harrington's second claim for relief is denied as to the equal protection claim and granted as to the substantive due process claim. The City of Portland and Mayor Clark's motion to dismiss Harrington's third claim for relief is granted.

3. Defendants Lezak, Beatty, and Watson's motion to dismiss Harrington's third claim for relief is granted.

4. The court reserves ruling on the City of Portland and Mayor Clark's motion to dismiss Harrington's fourth claim for relief. The parties are directed to contact Judge Frye's courtroom deputy to set up a briefing schedule for further consideration of this claim.

5. The City of Portland and Mayor Clark's motion to dismiss Harrington's fifth claim for relief is granted.