Edward R. TEITEL, M.D., Plaintiff,

v.

**UNIVERSITY OF HOUSTON BOARD OF REGENTS, et al., Defendant.**

No. CIV.A. H–01–1731.

United States District Court, S.D. Texas, Houston Division.

Dec. 31, 2002.

Dunn O'Connor, Gary L Rosenthal, both in their official and individual capacities, Michael Olivas, Professor, Lowell Wood, Dr, Julie P McKay, both in their official and individual capacities, William F Munson, Dr, both in his official and individual capacities, defendants.

## MEMORANDUM AND ORDER

HOYT, District Judge.

Having conducted a review of the Memorandum and Recommendations [Doc. # 52], as well as all other materials on file in this proceeding, and noting that no Objections have been filed to the Memorandum and Recommendations, this Court finds that the Memorandum and Recommendations are well founded and are herein adopted in full. It is, therefore,

**ORDERED** that Defendant's First Amended Motion for Summary Judgment [Doc. # 43] is **GRANTED**. Finally, it is

**ORDERED** that this matter is **DISMISSED** with prejudice from the docket of the Court.

The Clerk of Court shall file this Memorandum and Order and provide the parties with a true copy.

## MEMORANDUM AND RECOMMENDATIONS

BOTLEY, United States Magistrate Judge.

Defendants Morrie K. Abramson, George Eugene McDavid, Thad Smith, Eduardo Aguirre, Jr., Suzette T. Caldwell, Theresa W. Chang, Charles E. McMahen, Morgan Dunn O'Connor and Gary L. Rosenthal, members of the University of Houston Board of Regents; Michael Olivas and Dr. Lowell Wood, members of the University of Houston Residency Review Appeals Committee [1]; and, Dr. William F. Munson, the Assistant Vice President for

Edward R Teitel, M D, Houston, TX, for Edward R Teitel, M D, plaintiff.

Allison Ianthe Wong, Office of the Attorney General, Austin, TX, Joey W Moore, Austin, TX, for University of Houston Board of Regents, defendant.

Allison Ianthe Wong, Office of the Attorney General, Austin, TX, for Unnamed Members of the University of Houston Who Constitute the Residency Appeals Committee, defendant.

Joey W Moore, Austin, TX, for the University of Houston Residency Appeals Committee, Morrie K Abramson, George Eugene McDavid, Thad Smith, Eduardo Aguirre, Jr, Suzette T Caldwell, Theresa W Chang, Charles E McMahen, Morgan

---

1. Julie McKay, initially alleged by Teitel to be

a member of the University of Houston Resi-

Student Development and Dean of Students of the University of Houston (collectively referred to as "Defendants") move for summary judgment. *See* Defendants' First Amended Motion for Summary Judgment (Entry # 43) and Reply to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 48). Defendants seek the dismissal of Plaintiff Edward R. Teitel's ("Teitel") Second Amended Complaint (Entry # 38) claims against them in their official and individual capacities, including allegations of state common law violations, as well as federal statutory and constitutional violations must be dismissed for failure to state viable claims and because of Defendants' alleged absolute and qualified immunities. *Id.* Teitel, who has sued each of the Defendants in their individual and official capacities, contends that their refusal, as appointees in service to a state supported university, to classify him as an in-state resident of Texas, thereby, allowing a reduction in his tuition violates, among other things, his rights to due process, equal protection, to travel and to be free of irrebuttable presumptions, all in contravention of the Constitution and 42 U.S.C. § 1983. *See* Plaintiff's Second Amended Complaint (Entry # 38). Further, Teitel maintains that Defendants' acts constitute negligence, gross negligence and breach of contract. See *id.* Teitel maintains, therefore, that dismissal would prove improper as his claims present a genuine dispute as to material fact, thereby, defeating summary judgment; and, that Defendants failed to sufficiently establish that they are entitled to either official or qualified immunity. *See* Plaintiff's Reply to Defendants' First Amended Motion for Summary Judgment (Entry # 47).

Following a review of the dispositive motion and the response, the supporting documents, including affidavits, and the pleadings filed in this matter, it is recommended that Defendants' request for summary dismissal be allowed.

## STATEMENT OF FACTS

### Relevant Factual and Procedural Background

Edward Teitel, a graduate of Sul Ross State University in Alpine, Texas and the University of Texas Health Science Center located in San Antonio, Texas, is a recent graduate of the University of Houston Law Center. *See* Plaintiff's Second Amended Complaint at ¶ 19; *see also* Plaintiff's Petition for Reclassification, Exhibit D, Defendants' First Amended Motion for Summary Judgment (Entry # 43). In 1997, Teitel, a resident of and a practicing surgeon in Ozark, Alabama, applied for admittance to the University of Houston's law school.[2] *See* Application, Exhibit B, *id.* Shortly thereafter, in mid–1998, Teitel moved to Georgia from Alabama, to commence a job and new career as an investment banker. *See* Teitel's deposition at pp. 8 and 14, Exhibit A, *id; see also* Teitel's deposition attached as Exhibit to Plaintiff's Response to Defendant's First Amended Motion for Summary Judgment (Entry # 47). Nonetheless, Teitel and his family considered Alabama, their permanent residence. *Id.*

The University of Houston Law Center informed Teitel, during the Fall of 1999,

---

dency Review Appeals Committee, was voluntarily dismissed by Plaintiff. *See* Parties' Agreed Stipulation to Dismiss Julie McKay (Entry # 41).

**2.** The University of Houston is a state supported public institution of higher education, located in Houston, Texas and comprised of colleges offering undergraduate, graduate and professional degrees in a variety of disciplines. *See* Exhibit 4, Plaintiff's Second Amended Complaint (Entry # 38).

that he was accepted for admission to the law school. In April of 1999, Teitel submitted a Registration Commitment Form, evidencing his intent to enroll at the law school, however, he requested a deferment of his admission until the Fall of 1999. *See* Registration Commitment Form, Exhibit E, Defendant's First Amended Motion for Summary Judgment (Entry # 43); *see also* Teitel's deposition at p. 8. Teitel decided to become a permanent resident of Texas in April or May of 1999, partly because his son, daughter-in-law and granddaughter had lived in Texas for at least ten years. *See* Teitel's deposition at p. 4. Teitel sold his Alabama home, purchased a home in Houston and moved to Texas in June of 1999. *See* Teitel's deposition, Exhibit A at pp. 4 and 32 and Deed Of Trust attached to Exhibit D, *id.* Teitel maintains that, prior to his graduation, he attended the University of Houston Law Center as a full-time student since August, 1999. *See* Plaintiff's Second Amended Complaint (Entry # 38) at ¶ 7.

Shortly after moving to Texas, Teitel requested that he be classified an "in-state" resident, as opposed to a "nonresident," in order to obtain a reduction in the cost of his tuition for law school.[3] On August 9, 1999, Julie P. McKay ("McKay"), Associate Dean for Student Affairs, wrote to Teitel denying his request for reclassification as a resident, noting that his application to the university was marked, "nonresident" and that, when applying for admission, he had given "Alabama" as his place of permanent residence. McKay's letter did indicate, however, that Teitel had the right to appeal the denial of his request for reclassification. *See* McKay's letter, Exhibit D, Defendant's First Amended Motion for Summary Judgment (Entry # 43). Teitel is not contesting this denial of his request for residency reclassification, but is contesting the subsequent refusals to reclassify him a resident student of the University of Houston Law Center.

At the beginning of the year 2000, Teitel and Dr. Nhan H.T. Nguyen, a fellow physician and law school classmate, formed a partnership, Origenesis, to provide biomedical consulting services. *See* Teitel's deposition at pp. 35–37. The partnership earned a total of two thousand five hundred dollars ($2,500), had no employees, acted from Teitel's home and Teitel's services on behalf of Origenesis were provided on a part-time (an average of ten hours per week) basis until the end of 2001, when the partnership dissolved. See *id.* at pp. 40–41. During approximately the same period of time, Teitel was working under similar conditions but devoting fewer work hours to the efforts of his wife's sole proprietorship, Pollution Solution, a distributor of air purification machines. See *id.* at pp. 45–45. In June of 2000, Teitel began working ten hours per week as a law clerk, on an independent contractor basis, for the Houston law firm, Hays, McConn, Rice and Pickering. Teitel ceased working for the lawfirm in August of 2002. See *id.* at pp. 45–46. During the period Teitel was enrolled at the University of Houston, he was never gainfully employed for a twelve month consecutive period. *Id.* at p. 67.

On August 18, 2000, Teitel wrote a letter to Mario Lucchesi ("Luchessi"), University of Houston Registrar, indicating that he was enclosing his Petition for Reclassification, as well as *indicia* of his intent to be a permanent resident of the State of Texas, including a copy of his Texas driver's license and voter's registra-

---

**3.** There is a significant increase in the tuition charged non-resident students at the University of Houston, than that charged resident students. *See* Schedule of Charges, Exhibit 4 at pp. 14–15, Plaintiff's Second Amended Complaint (Entry # 38).

tion card, Texas bank account statements, application for a Texas medical license (subsequently, granted August 31, 2001), and a statement for the 1999 property taxes owed and the Deed of Trust for his Texas home. *See* Exhibit D, Defendant's First Amended Motion for Summary Judgment (Entry # 43). Additionally, copies of agreements between the representative of a company, Streamline Innovations, requiring the services of Teitel's partnership, Origenesis, the assumed name certificate of his wife's company, and affidavits of individuals attesting to their knowledge that Teitel intended to remain a resident of Texas, were submitted by Teitel in support of his Petition for Reclassification. *Id.* Kathy Dominguez of the University Enrollment Services requested Teitel submit within eight days, a letter, written on company letterhead, evidencing that he had been gainfully employed for a prior twelve month period, to support his request for reclassification. *See* Kathy Dominguez's letter, Exhibit G, *id.* On August 26, 2000, Teitel wrote Dominguez, explaining he would be unable to submit such a letter, indicating that he was self-employed, and was prohibited by the law school from engaging in full-time employment. *See* Teitel's letter, Exhibit H, *id.* The Office of Registration and Admissions rejected Teitel's request for reclassification for his failure to produce evidence of gainful employment during a twelve month period and, accordingly, in October of 2000, Teitel appealed the denial of his request for residency reclassification to the Residency Appeals Committee. *See* Exhibits I and J, *id; see also* Exhibit 2, Plaintiff's Second Amended Complaint (Entry # 38).

Dr. William F. Munson, an Assistant Vice President for Student Development and Dean of Students, advised Teitel, by letter dated November 13, 2000, that his request for reclassification as a resident student was denied by the Residency Appeals Committee, because he was unable to establish his permanent residency in Texas, prior to his enrollment at the University of Houston. *See* William Munson's letter, Exhibit F, *id.; see also* Exhibit 1, Plaintiff's Second Amended Complaint (Entry # 38). Thereafter, Teitel requested that Dennis Duffy ("Duffy"), General Counsel for the University of Houston, set aside the Committee's denial of his appeal, and Duffy denied the request on January 25, 2001. *See* Plaintiff's Second Amended Complaint *id.* at ¶ 15.

Teitel, *pro se,* filed his lawsuit on April 6, 2001, in the 80th Judicial District Court of Harris County, Texas, maintaining that the university's refusal to reclassify him an in state resident constituted a violation of civil rights secured by 42 U.S.C. § 1983, and reflected a callous and reckless indifference abrogating his constitutional rights to due process, equal protection, to interstate travel and to establish residence, to be free of restrictions on interstate commerce, and to rebut the presumption that he is an out-of-state resident. *See* Plaintiff's First Amended Complaint (Entry # 15), Counts 1–7. Further, Teitel contends that the Defendants' alleged wrongful acts constitute negligence, gross negligence and a breach of the Defendants' contractual obligation to ensure that their deliberations, as to Teitel's residency status, were conducted in good faith. See *id.* On October 31, 2001, Teitel was allowed leave to add the individual defendants as parties and his subsequently filed First Amended Complaint (Entry # 15) sought monetary[4] and injunctive relief as recom-

---

**4.** Teitel essentially seeks the reimbursement of that portion of his tuition he believes he wrongfully paid the University of Houston during the two years he alleges he was erroneously classified an out-of state resident by Defendants.

pense for Defendants' alleged acts. *Id.* at p. 10.

Defendants removed this matter from the state court on May 23, 2001, invoking the Court's jurisdiction in accordance with 28 U.S.C. §§ 1331 and 1441(b).[5] *See* Notice of Removal (Entry # 1). Defendants' subsequent Motion for Partial Dismissal (Entry # 22) was granted in part, dismissing, on grounds of Eleventh Amendment sovereign immunity, Teitel's claims for monetary damages against Defendants in their official capacities; but, denying without prejudice, Defendants' claims of official and qualified immunity. *See* Memorandum and Order (Entry # 34).

As a consequence of the Court granting Defendants' Motion for A Rule 7 Order, in which the Court directed Teitel to amend his First Amended Complaint to more fully and clearly set forth the alleged constitutional violations, including, but not limited to the manner in which he contends each individual defendant committed each alleged constitutional infraction and the constitutional obligation and violation attributed to each individual defendant, Teitel filed a Second Amended Complaint (Entry # 38) seeking monetary and injunctive relief for Defendants' alleged negligence, gross negligence, breach of contract, and constitutional and section 1983 violations. See *id.* Defendants now move for summary dismissal of Plaintiff's Second Amended Complaint. *See* First Amended Motion for Summary Judgment (Entry # 43).

## ANALYSES

### Standards of Review

Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is, therefore, entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), quoting *Fed.R.Civ.P. 56(c);* see also *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). The moving party bears the burden of showing that there is an absence of evidence to support the nonmovant's case. *Id.* A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *PYCA Industries, Inc. v. Harrison County Waste Water Management District,* 177 F.3d 351, 361 (5th Cir.1999); *Crowe v. Henry,* 115 F.3d 294, 296 (5th Cir.1997). The substantive law dictates which facts are "material." See *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir.) *cert. denied,* 528 U.S. 906, 120 S.Ct. 249, 145 L.Ed.2d 209 (1999); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). An issue is material if its resolution could affect the outcome of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. Facts may be gleaned from reviewing the pleadings, answers to interrogatories, admissions and affidavits on file. See *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*). In deciding whether a fact issue has been created, all justifiable inferences must be viewed in the light most favorable to the nonmoving party, and questions of law are reviewed *de novo.* See *Reeves v. Sanderson Plumbing Prods.,* Inc., 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods. Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Horton v. City of Houston,* 179 F.3d 188, 191 (5th Cir.1999). If the summary judgment mo-

**5.** This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. section 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act and Rule 72, Fed.R.Civ.P. See *Order of Referral* (Entry # 9)

tion is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts of significant probative value, establishing that there exists a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Association of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir.1982).

## DISCUSSION

### I. Plaintiff has Failed to Demonstrate That He Was Denied a Residency Reclassification As a Result of Federal Statutory or Constitutional Violations

### A. Plaintiff's Constitutional Claims

#### (1) The Allegation of the Fourteenth Amendment Violation of the Right to Freedom from Permanent Irrebuttable Presumptions

■ The University of Houston charges higher rates of tuition to those individuals, who seek an education from the university, but are not residents of the State of Texas. *See* Schedule of Charges, Exhibit 4 at pp. 14–15, Plaintiff's Second Amended Complaint (Entry # 38). Many state universities throughout the nation follow this practice; and, it is justified by the State's wish to retain an education at a reduced rate for the benefit of its citizens, whose tax dollars, have supported the maintenance of the public universities' services. See *Vlandis v. Kline*, 412 U.S. 441, 452–54, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). The Supreme Court has recognized that the States have a legitimate interest in "protecting and preserving the quality of its colleges and universities and the right

of its own *bona fide* residents to attend such institutions on a preferential tuition basis." See *id.* In doing so, however, the Court held that a State is unable to secure to its residents a reduced tuition at publicly supported institutions by maintaining a permanent irrebuttable presumption of nonresidency against out-of-state students moving to the State with the intent of establishing residency. *Id.* at 453, 93 S.Ct. 2230. The State is allowed to establish "reasonable criteria" for demonstrating in-state status in order to differentiate those resident students from individuals who move to the State solely for educational purposes. *Id.*

The State of Texas has implemented legislation that deems, for a period of one year, an individual who has applied as an out-of-state resident, a "nonresident" student whose primary purpose for residing in Texas is to attend an educational institution. After residing in Texas for one year, section 54.054 of the Texas Education Code allows the individual to seek reclassification as a resident student entitled to a reduced tuition, providing as follows:

A nonresident student classification is presumed to be correct as long as the residence of the individual in the state is primarily for the purpose of attending an educational institution. After residing in Texas for at least 12 months, a nonresident student may be reclassified as a resident student as provided in the rules and regulations adopted by the Coordinating Board, Texas College and University System. Any individual reclassified as a resident student is entitled to pay the tuition fee for a resident of Texas at any subsequent registration as long as he continues to maintain his legal residence in Texas. Before February 15, 1972, the Coordinating Board, Texas College and University System, shall promulgate such rules and regula-

tions. **TEX. EDUC. CODE ANN.** § 54.054 (Vernon 1971).

Section 21.23 of the Texas Administrative Code sets forth the rules and regulations for seeking reclassification as a resident student, by reiterating the Education Code's directive that, upon first enrolling in the State's educational institution, individuals will be classified as "nonresidents" during the period that they are enrolled in the institution unless they seek reclassification. *See* 21.23(a), Tex. Admin. Code. The Administrative Code makes clear that reclassification, permitting the payment of tuition at a reduced rate, is allowed in one of two instances: 1) a nonresident student who withdraws from the school and while residing in the State, is gainfully employed for a consecutive period of twelve months, before re-enrolling; or, 2) a nonresident student who remains enrolled while gainfully employed for twelve consecutive months may, following the twelve month consecutive period of gainful employment, be entitled to reclassification, if *indicia* is provided in support of the request for reclassification that is found to establish a domicile in the state of Texas. See *id.* at § 21.23(b) and (c).

Subsection (d) delineates those additional factors that may be considered in determining whether an applicant for reclassification has established a domicile in the State: 1) the length of residence and employment prior to enrolling in the institution; 2) the nature of employment while a student; 3) presence in Texas as a part of a household transferred to the state by an employer or as part of a household moved to the state to accept employment offered in Texas; 4) purchase of a homestead; or 5) dependency upon a parent or legal guardian who has resided in Texas for at least twelve consecutive months immediately preceding the student's enrollment. *Id.* at § 21.23(d). It is clear that the five factors listed are not exclusive, but merely provide a guideline as to those items that may prove persuasive in establishing Texas as the domicile of the reclassification applicant. See *id.* Subsection (e) suggests that the decision as to whether domicile is established is a deliberate one; and, that until the decision is made, the student's residence is presumed to be the domiciliary state when the student applied and that generally, it will remain the student's residence until the student completes the course of the education sought, stating in part:

> All of these facts are weighed in light of the fact that a student's residence while in school is primarily for the purpose of education and not to establish residence, and that decisions of an individual as to residence are generally made after the completion of an education and not before. . . . **TEX. ADMIN. CODE** § 21.23(e).

Subsection (e) also provides that those individuals who have resided in Texas for a period of twelve months and moved to the State as the spouse of a person in the military, or as a member of a family whose sole purpose in moving to the State was to accompany a family member who accepted employment in Texas, either through the State's economic development and diversification plan or otherwise, will not labor under the presumption that they moved to Texas to attend school, if they can provide *indicia* that supports the establishment of a domicile in Texas, stating:

> . . . A person who moves to Texas as the spouse of an individual transferred here by the military (see § 21.28 of this title (relating to Military Personnel, Veterans and Commissioned Officers of the Public Health Service)), through the state's plan for economic development and diversification (see § 21.26 of this title (relating to Economic Development and Diversification Employees)) or as part of a

household moved to the state to accept employment offered in Texas, is considered not to have come to Texas for the purpose of going to school. Therefore, once he or she has physically resided in Texas for 12 consecutive months, even though the student may have been enrolled full-time, the person may be considered a resident if he or she has otherwise established a domicile in the state. **TEX. ADMIN. CODE § 21.23(e).**

Teitel does not contend that he moved to Texas to accept employment in the State or as the result of a military transfer.

The Texas Court of Appeals in *Smith v. Board of Regents of the University of Houston System*, found that the criteria set forth in the reclassification rules does not create a permanent irrebuttable presumption of nonresidency and, accordingly, comports with the Supreme Court decision in *Vlandis v. Kline, supra*, as the rules were determined not violative of the Due Process Clause of the Fourteenth Amendment. See *Smith v. Board of Regents of the University of Houston*, 874 S.W.2d 706, 709–10 (Tex.App. Houston [1st Dist.] 1994, *cert. denied* 514 U.S. 1111, 115 S.Ct. 1964, 131 L.Ed.2d 855). Teitel finds no discomfort with the holding in *Smith* as he is not maintaining that the reclassification rules are violative of the Fourteenth Amendment. Teitel does, however, maintain that the manner in which the Defendants applied the rules to his request for reclassification was arbitrary and capricious and, therefore, violated the Fourteenth Amendment, as the way in which they considered his reclassification request resulted in creating a permanent irrebuttable presumption of his nonresidency. *See* Counts 1, 2, 7, 8, 11, 15, 16, 19, 20, 22, and 23 of Plaintiff's Second Amended Complaint (Entry # 38); *see also* Teitel's deposition at pp. 86–111, attached to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 47).

Essentially, Teitel is claiming that because he is "a real honest to God, Texan" and "a poster boy of a Texas resident," that in order for the Defendants to have determined otherwise, they must not have followed the proper rules for assessing Teitel's request for residency reclassification. *See* Teitel's deposition at p. 108, *id.* Teitel acknowledges that he believes Defendants violated his constitutional right to be free of permanent irrebuttable presumptions, because he was not reclassified a "resident" student and because he has not seen Committee notes taken, if any, nor has he witnessed the procedures or process followed by those reviewing his reclassification request. *See* Teitel's deposition, *id.* at pp. 86–111. Teitel admits, therefore, that he has no actual proof that Defendants' application of the residency reclassification rules and regulations resulted in his having to labor against a permanent irrebuttable presumption, he merely assumes that it must be the case because he was not reclassified a resident student.[6] See *id.*

In actuality, however, it appears that Teitel has misconstrued the criteria allowing for reclassification, as he seeks to submit the items referred to in section 21.23(d) of the Texas Administrative Code, for that required by subsections (b) and (c). Teitel was not reclassified as a resident student because he failed to establish that he was gainfully employed in Texas for a twelve month consecutive period prior to seeking reclassification. Teitel admits he was not gainfully employed in Texas for a twelve month consecutive period prior to seeking reclassification. *See* Teitel's Deposition, *id.* at p. 67. Defendants maintain that the denial of Teitel's

---

**6.** Teitel refers to this assumption as an "inference." See *id.*

request for reclassification was solely because he failed to meet the requisites for reclassification and was done in conformance with the rules and regulations. *See* Affidavits of Wood, Olivas and Munson at Exhibits K, L and M of Defendants' First Amended Motion for Summary Judgment (Entry # 47). Teitel is unable to refute Defendants' claims that their conduct was not arbitrary or capricious with mere allegations that he is entitled to an "inference" that his constitutional right to be free of permanent irrebuttable presumptions was infringed because he believes himself to be an "honest to God, Texan." *See* Teitel's deposition, *id.* at 108. Because Teitel was an admitted nonresident of the State of Texas when he enrolled at the University of Houston's law school, he would have to be gainfully employed for a consecutive period of twelve months, prior to seeking reclassification as a resident student. *See* Tex. Admin Code § 21.23(b)(c). Teitel's efforts at work, while in law school, failed to constitute the consecutive gainful employment necessary to secure reclassification, as Teitel was working intermittently from his home, was not receiving compensation commensurate with gainful employment, and did not work fulltime. *See* Teitel's deposition, *id.* at pp. 35–46. Teitel doesn't even offer his efforts at working as evidence of gainful employment. See *id.* at 67. The denial of Teitel's request for residency reclassification was not, therefore, arbitrary or capricious, as the request for reclassification as a resident student failed to comport with the criteria set forth by sections 54.054 of the Texas Education Code and 21.23 of the Texas Administrative Code. Teitel did not labor against a permanent irrebuttable presumption of nonresidency. In order to successfully rebut the presumption of nonresidency, Teitel needed to provide *indicia* of his gainful employment for a twelve month consecutive period. Teitel failed to do this and it was, therefore, the failure to show that he

had a full-time job for a consecutive twelve month period that resulted in the denial of his request for reclassification. Furthermore, Teitel was never denied the right to seek reclassification nor the right to appeal the denial of his request for reclassification. Teitel may have been reclassified a resident student if he had satisfied the reviewing Committee that, while he was living in Texas, he had been gainfully employed during a twelve month consecutive period.

Section 54.054 of the Texas Education Code gave Teitel no right to be reclassified a resident student, it merely provided Teitel the right to have his request for reclassification considered. In order for Teitel to be reclassified a resident student, he had to meet all of the criteria set forth in the Education Code's section 54.054 and section 21.23 of the Administrative Code. In this instance, where Teitel is unable to show he met the criteria for consideration of his request for reclassification or that Defendants failed to follow the rules and regulations in considering his residency reclassification request; and, he was availed the opportunity to seek reclassification, the forum for review of his application and the right to appeal the denial of his request for reclassification, Teitel is unable to show that Defendants' conduct was so arbitrary and capricious as to constitute an irrational infringement on his procedural or substantive due process rights. See *e.g., Harrington v. Harris*, 108 F.3d 598, 606 (5th Cir. 1997). Teitel's claims that his Fourteenth Amendment constitutional right to be free of permanent irrebuttable presumptions and arbitrary and capricious state conduct must, therefore, be summarily dismissed.

**(2) The Allegation of the Violation of the Fourteenth Amendment Rights to Equal Protection and Travel**

 Teitel contends that, Defendants' failure to reclassify him a resident stu-

dent, violated his Fourteenth Amendment constitutional rights to equal protection and to travel. Further, Teitel maintains that the infringement on his right to travel is an unlawful restriction on interstate commerce amongst the States. *See* Counts 5 and 6, Plaintiff's Second Amended Complaint (Entry # 38). As has been discussed *supra*, Teitel has failed to establish that the denial of his request to be reclassified was a violation of his procedural or substantive Fourteenth Amendment rights. Teitel's right to travel to Texas to attend law school was not impeded and he has testified that he intended to move to Texas, regardless of whether he attended law school. *See* Teitel's deposition at p. 17, attached to Plaintiff's Reply to Defendants' First Amended Motion for Summary Judgment (Entry # 47). Furthermore, Teitel intimated that it was the University of Houston's graduate law program in health law that motivated him to attend the law school, not the rate of tuition for residents. *Id.* at pp. 15–16. More importantly, however, it is Teitel's acknowledgement that no personal *animus* resulted in his alleged loss and his failure to establish that he was treated differently from others similarly situated, that impedes his ability to refute Defendants' summary judgment challenge of his Fourteenth Amendment equal protection violations claims. See *id.* at p. 79.

### B. Plaintiff's Federal Statutory Claims

#### (1) The 42 U.S.C. § 1983 Violations

■ Teitel's claims that the Defendants' alleged wrongful conduct constituted a violation of 42 U.S.C. § 1983 must also fail as he has not established any constitutional violation. See Counts 1 and 7, Plaintiff's Second Amended Complaint (Entry # 38). In order to establish a violation of 42 U.S.C. § 1983, Teitel must demonstrate: 1) a violation of rights secured by the Constitution or laws of the United States;

and 2) establish that the alleged deprivations were committed by persons acting under color of state law. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir.1994). At most, Teitel has merely established an assumption that constitutional violations have occurred as a result of his failure to achieve residency reclassification while a student at the Defendant university, and has not demonstrated that he was subject to a permanent irrebuttable presumption that resulted in the denial of his request for residency reclassification. *See* Teitel's deposition at pp. 86–111 attached to Plaintiff's Response to Defendant's First Amended Motion for Summary Judgment (Entry # 47). Teitel's mere conclusional assertions of constitutional deprivations, however, will not suffice in establishing the violation of the civil rights accorded by 42 U.S.C. § 1983. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir.2002); *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir.1996). Teitel's allegations of 42 U.S.C. § 1983 violations must, therefore, also be summarily dismissed.

### II. Plaintiff has Failed to Demonstrate that the Denial of His Request for Residency Reclassification Was Caused by Alleged Violations of State Common Law

### A. Plaintiff's State Common Law Claims

#### (1) The Breach of Contract Allegations

Teitel contends that Defendants breached their contractual obligation to him, when they induced him to believe that he could ultimately become a resident student of the law school and, therefore, able to attend the school at the reduced level of tuition. Teitel specifically claims that his reliance upon the statutory provision, Title 3 § 54.054 of the Texas Education Code, which allows for the reclassification of a nonresident student after residing in Tex-

as for a period of twelve months, was made in good faith; and, that Defendants' failure to reclassify him constituted a breach of a contractual obligation to classify him a resident student. *See* Count 4, ¶ 29 and Count 14 ¶ 50, Plaintiff's Second Amended Complaint (Entry # 38).

Defendants maintain that they breached no contractual agreement with Teitel and that § 54.054 of the Texas Education Code does not mandate that Teitel be reclassified a resident student. *See* Defendants' First Amended Motion for Summary Judgment (Entry # 43).

■■ A determination as to whether a party has breached a contract is reached as a matter of law. *Scaife v. Associated Air Center, Inc.,* 100 F.3d 406, 410 (5th Cir.1996); *Interceramic, Inc. v. South Orient R. Co., Ltd.,* 999 S.W.2d 920, 924 (Tex. App.—Texarkana 1999, writ denied); *Garza v. Southland Corp.,* 836 S.W.2d 214, 219 (Tex.App.—Houston [14th Dist.] 1992, no writ). The party seeking to enforce a contract, in this instance Teitel, must establish that a contract between the parties existed; that duties were created by the contract; that a breach of the duties occurred; and, that damages were incurred as a consequence of the alleged breach. See *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 127 (Tex.App.-Corpus Christi 1999, writ denied); *Townewest Homeowners Ass'n, Inc. v. Warner Communication Inc.,* 826 S.W.2d 638, 640 (Tex.App.-Houston [14th Dist.] 1992, no writ). In Texas, each of the following elements must exist in order for there to be a binding contract: 1) an offer; 2) an acceptance in strict compliance with the terms of the offer; 3) a meeting of the minds; 4) each party's consent to the terms; and 5) execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Alsobrook,* 3 S.W.3d 598, 604 (Tex.App.—San Antonio, 1999, pet. denied); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex. App.—San Antonio, 1997, no writ).

■ Mutual assent is a fundamental part of a contract. See *National Casualty Co. v. Lane Exp., Inc.,* 998 S.W.2d 256, 264 (Tex.App.-Dallas 1999, no writ); *Antonini v. Harris County Appraisal Dist.,* 999 S.W.2d 608, 610 (Tex.App.-Houston [14th Dist.] 1999); *Gilbert v. Pettiette,* 838 S.W.2d 890, 893 (Tex.App.-Houston [1st Dist.] 1992, no writ). Teitel does not offer an oral or a written contract reflecting the assent of the parties to an agreement that Defendants would reclassify him as a resident student.[7] It appears, therefore, that Teitel is alleging some *quasi* or implied contractual agreement between himself and the Defendants. In this instance, any claim of a *quasi*-contractual relationship must also fail for lack of mutual assent. Teitel's mere commitment to attend the law school does not imply some contractual agreement between himself and the Defendants that he would be reclassified a resi-

---

7. It is noted that Teitel does not even allege "privity" between himself and the Defendants that is generally necessary to claim a contractual benefit. In fact, Teitel did not know the Defendants prior to his admission to the law school nor does he assert some affirmative act between either of the Defendants and himself that lead to an alleged contractual relationship. *See* Plaintiff's Second Amended Complaint (Entry # 38); *see also* Teitel's deposition at pp. 69–70, Plaintiff's Response to Defendants' Motion for Summary Judgment (Entry # 47). Defendants contend that Teitel is no longer asserting claims against the Appeals Committee members in their individual capacities for breach of contract, however, although at one point Teitel contends he is abandoning this position, at other areas in his deposition it appears he is pursuing the claim. *See* Defendants' Second Amended Motion for Summary Judgment (Entry # 46) at p. 11, fn. 9; *see also* Teitel's deposition at p. 56, 67, attached to Plaintiff's Response to Defendants' Second Amended Motion for Summary Judgment (Entry # 47).

dent student after residing in Texas for a period of one year. If that were the case, then Teitel, himself, would be in breach of such an agreement, as he applied for reclassification shortly after moving to Texas, and prior to residing in the State for a period of twelve months. *See e.g.,* McKay's letter, Exhibit D, Defendants' First Amended Motion for Summary Judgment (Entry # 43).

Further, Section 54.054 of the Texas Education Code does not impute any duty upon the Defendants to reclassify Teitel a resident student, any more than his commitment to attend the university law school did. At most, section 54.054 merely allows the reclassification of a student, once the individual has resided in the State for a period of twelve months. The statute also does not compel any Texas college or university to reclassify a student, even if that student is able to show that he resided in the State for a twelve month period, unless the student is able to establish that he or she comported with the rules and regulations effecting student residency reclassification. See *Tex. Educ.Code Ann.* § *54.054 (Vernon 1971).*

Section 21.23 of Chapter 19 of the Texas Administrative Code makes clear, as does section 54.054 of the Texas Education Code, that an individual enrolling in a Texas public college or university while a nonresident of the State, will be presumed a nonresident for the entire time the individual is enrolled in the school, unless the individual applies for reclassification. See *id.; see also* 19 Tex. Admin. Code § 21.23(a) (West 1997). The Administrative Code, however, indicates that those enrolled nonresident students who are able to establish that they had been employed

for twelve consecutive months are able to rebut the presumption of nonresidency if they provide evidence of an intent to establish permanent domicile in the State of Texas.[8] See *id.* at § 21.23(c). Subsection (d) of the Administrative Code delineates various matters, including the purchase of a homestead, that may be considered in evaluating whether residency reclassification is proper; but, it is sections 21.23(b) and (c) that makes clear that evidence of gainful employment in the State for a twelve month period, prior to application for reclassification, is a crucial element in determining whether an applicant will be reclassified. *Id.*

Teitel never supplied proof of gainful employment for a twelve month period in support of his request for residency reclassification. *See* Teitel's deposition at p. 67, attached to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 47). Teitel is, therefore, unable to demonstrate that he had a mutual agreement with Defendants to reclassify his residency status despite his ineligibility for reclassification. Without a showing of mutual assent, Teitel's claims of breach of contract must fail, as he is unable to establish the existence of a contractual agreement between himself and the Defendants.

Teitel's assertion that he was induced, perhaps fraudulently (although this is not clearly alleged), to attend the University of Houston's law school by a promise from the Defendants that he would be reclassified as a resident student and allowed to pay a reduced tuition, is faulty as Teitel maintains that it was the law school's reputation in health law that encouraged him to apply for admission.[9] *See* Teitel's deposi-

---

**8.** The administrative provision makes clear that an enrolled nonresident student may also withdraw from school, be gainfully employed for a period of twelve months and then seek

reclassification as a resident student. *See* 19 Tex. Admin. Code section 21.23(b).

**9.** The Court undertakes this discussion as it remains mindful that a fraudulently induced

tion at pp. 15–17, Plaintiff's Response to Defendants' Motion for Summary Judgment (Entry # 47). Furthermore, Teitel may have relied upon the statutory allowance for consideration of a request for reclassification as a resident student, as he asserts; but, the reliance upon the legislative provision for such a classification when seeking law school admission, was not reasonable when there is clearly no guarantee of residency reclassification offered by the Texas legislation. *See* § 54.054, Tex. Educ.Code and § 21.23, Tex. Admin. Code.

■ Finally, Teitel has been unable to establish that any duties were created by the alleged contractual agreement. Teitel maintains that the Defendants owed him the duty to make a good faith inquiry as whether he met the requisite criteria to be reclassified as a Texas resident for tuition purposes. *See* Count 4, ¶ 29 and Count 14, ¶ 50 of Plaintiff's Second Amended Complaint (Entry # 38). The Defendant university is only able to enter into a contractual agreement through its authorized representatives. Each member of the University of Houston's Board of Regents is appointed to the position by the presiding governor of the State of Texas. Each member of the University of Houston Residency Appeals Committee is an employee of the University of Houston. Each of the individual Defendants is, therefore, a public officer and/or employee. In their official capacities, neither of the individual Defendants owed Teitel a contractual obligation. Their obligation is to guard and protect the interests of the public, in this instance the citizens of the State of Texas; and, thus, are unable to encumber their public powers through private contracts at public expense. See *e.g., Harrington v. City of Portland*, 677 F.Supp. 1491, 1499–

1500 (D.Or.1987); *see also* 42 Am.Jur., Public Officers § 84, p. 945. Teitel never established that the members of the Board of Regents, either individually or in an official capacity, ever considered his request for reclassification, or that they directed the Appeals Committee's consideration of Teitel's request, or that they had a duty to consider the request. Neither of the individual Defendants, in their official capacities or individually, had the ability to enter into a private contract with Teitel, that would have diminished their statutorily conveyed discretionary ability to consider his application for residency reclassification and, thereby, disparage their public trust. *Id.* If Defendants had the duty to make a good faith inquiry as to his eligibility for residency reclassification, it was their duty to so because the public entrusted them with the duty, not because of any contractual agreement between themselves and Teitel.

Teitel's inability to establish the requisite mutual assent or contractual obligation necessary to prove the existence of a contract, either actual or implied, between himself and any of the Defendants, has resulted in his failure to present a genuine issue of material fact as to the occurrence of an alleged breach; and, accordingly, Teitel's claims of breach of contract must, therefore, be summarily dismissed.

**(2) *The Negligence and Gross Negligence Allegations***

■ In order for Teitel to establish his negligence claim against the Defendants he must establish that the Defendants owed him a legal duty, that they breached that duty, that he suffered an actual injury, and that the breach of their duty was the proximate cause of the injury suffered.

---

party has not assented to an agreement because the fraudulent conduct precludes the requisite mutual assent. *Lyn–Lea Travel Corp.*

*v. American Airlines, Inc.*, 283 F.3d 282, 289 (5th Cir.2002); *see also* section 164 of the Restatement (Second) of Contracts (1979).

See *Calbillo v. Cavender Oldsmobile, Inc.,* 288 F.3d 721, 728–729 (5th Cir.2002); *Ford v. Cimarron Ins. Co., Inc.,* 230 F.3d 828, 830 (5th Cir.2000); *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 663 (Tex.1999). Teitel maintains that the Board of Regents had a duty, mandated by section 54.054 of the Texas Education Code, to establish rebuttable criteria allowing applicants to establish their eligibility for a reduction in tuition. *See* Counts 3 at ¶ 27 and 13 at ¶ 48 of Plaintiff's Second Amended Complaint (Entry # 38). Further, Teitel mandates that the individual board members had the duty to exercise reasonable care to monitor and supervise those to whom they delegated the duty to establish rebuttable criteria. *See* p. 56, Teitel's deposition, Exhibit A, Defendants' First Amended Motion for Summary Judgment (Entry # 43); see also Counts 21, 24, and 17 at ¶ 56. A reading of section 54.054 does not, however, mandate a duty upon any of the Defendants to establish rebuttable criteria to assess the eligibility of residency reclassification applicants. The statute merely provides that a student may seek reclassification in conformance with the rules and regulations adopted by the Coordinating Board of the Texas College and University System. *See* § 54.054, Tex. Educ.Code (Vernon 1971).

Teitel also relies upon sections 111.20 and 111.35 of the Texas Education Code to contend that the Board of Regents was legislatively conferred the responsibility and/or the authorization to delegate the responsibility for creating the rebuttable criteria used to consider residency reclassification and to supervise and monitor the activities of the Appeals Committee as they considered the reclassification applications. *See* ¶ 14 and ¶ 15 of Plaintiff's Second Amended Complaint (Entry # 38) at pp. 6–7. Teitel's construction, however, of sections 111.20 and 111.35 which merely mandate that the board, as the governing body of the university, vested with the powers to control, organize and manage through the enactment of bylaws, rules and regulations, seeks to displace the legislative directive that the Coordinating Board of the Texas College and University System, and not the Board of Governors, was given the power to make the rules and regulations with respect to residency reclassification. *See* § 54.054, Tex. Educ. Code. Ann. (Vernon 1971). Furthermore, as is suggested in the discussion with respect to Teitel's alleged breach of contract claims, any duty owed by the individual Defendants in their official capacities, is owed to the public at large, not to Teitel, individually. See *Harrington v. City of Portland,* 677 F.Supp. at 1499–1500.

Teitel's failure to establish that the Board of Regents, either individually or collectively, had the authority to enact the rules and regulations applicable to residency reclassification, to delegate such authority or to supervise or monitor the reclassification consideration activities of the Appeals Committee, compels dismissal of his negligence claims against the Board of Regents for Teitel's inability to demonstrate that the Board owed him the duties he claims.

■ Teitel alleges that the Appeals Committee failed to "exercise reasonable care in establishing policies and procedures for the committee" and failed to exercise reasonable care in carrying out their duties. *See* Count 13 at ¶ 48, Plaintiff's Second Amended Complaint (Entry # 38). Teitel is not, however, able to establish that it is a breach of the Committee's alleged duties that lead to his failure to obtain residency reclassification, in light of the fact that Teitel has admitted he was ineligible for consideration for reclassification, because he failed to be gainfully employed in Texas, for a period of twelve months prior to his seeking reclassification. *See* Teitel's deposition at p. 67,

attached to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 47). Even if Teitel were able to establish that the Appeals Committee members owed him the duty to exercise reasonable care and diligence when considering his residency reclassification request, Teitel would be unable to demonstrate that they breached that duty, as he contends he has no evidence that they failed to follow proper procedures in evaluating his request for reclassification. *See* Teitel's deposition at pp. 73–74, 85–86, attached to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 47). Teitel is, therefore, unable to successfully rebut the statements of Defendants Olivas, Munson and Wood, in which they aver that they considered his residency reclassification request in conformance with the rules and regulations set forth by the Coordinating Board. *See* Affidavits of Olivas, Munson and Wood, Exhibits K, L and M, Defendants' First Amended Motion for Summary Judgment (Entry # 43). Further, Teitel is unable to demonstrate that any alleged breach of duties was a proximate cause of his loss. Teitel failed to secure residency reclassification, because he was ineligible for reclassification, in accordance with §§ 54.054 of the Education Code and 21.23 of the Administrative Code, as he was unable to demonstrate that he was gainfully employed for a twelve month period prior to seeking reclassification and, therefore, unable to overcome the presumption that he was a nonresident, whose main purpose for living in Texas was to obtain an education from a state supported institution. *See* Tex. Admin. Code § 21.23.

The failure of Teitel to present a genuine issue of material fact as to his claims of negligence against the Defendants should result from a finding that, as a matter of law, he has failed to show that Defendants, The Board of Governors, individually and collectively, owed him a duty of care. *See e.g., Ford v. Cimarron Ins. Co., Inc.*, 230 F.3d at 830. Additionally, Teitel's inability to establish that the Appeals Committee breached a duty owing him and that the alleged breach of duty he alleges on the part of the Appeals Committee was a proximate cause of his loss should lead to a dismissal of the negligence claims, as well as necessarily Teitel's claims of gross negligence.[10] *See e.g., id.* at Counts 18, 25.

### III. Plaintiff's Claims Are Unable to Survive the Immunity Defenses

#### A. The Absolute and Qualified Immunity Defenses

Defendants maintain that Teitel's claims are barred by the affirmative defenses of absolute and qualified immunity. *See* Defendants' Answer to Complaint (Entry # 21), First Amended Motion for Summary Judgment (Entry # 43) and Reply to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 48). Defendants contend that their review of Teitel's request for residency reclassification and the subsequent appeal, provide them absolute immunity for their alleged *quasi*-judicial functions. *See id.* Although, it is arguable that individual members of the defending residency review committees were performing *quasi*-judicial functions allowing them absolute immunity, an examination of this defense is unnecessary as it is clear Teitel's claims

---

**10.** Teitel would have had difficulty establishing gross negligence in light of his assertion that the Defendants did not act with personal *animus,* which may negate a showing of willful or malicious conduct. *See* Teitel's deposition at p. 79, attached to Plaintiff's Response to Defendants' First Amended Motion for Summary Judgment (Entry # 47).

would not survive the more limited qualified immunity challenge.

### (1) Qualified Immunity

Qualified immunity will shield officials performing discretionary functions from civil damages liability, provided their actions meet the test of objective legal reasonableness. *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Sorenson v. Ferrie,* 134 F.3d 325, 327 (5th Cir.1998). A two-part inquiry is utilized to determine whether an official's alleged conduct meets the "objective legal reasonableness" test, by first making a determination as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 231–232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *White v. Balderama,* 153 F.3d 237, 240 (5th Cir. 1998). "Clearly established," for purposes of qualified immunity, means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *U.S. v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) *quoting Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Secondly, a determination is made as to if the violation occurred, under the circumstances known to the defendants, could objectively reasonable officials believe that their conduct did not violate clearly established law. See *Crawford El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1593–94, 140 L.Ed.2d 759 (1998); *Baker v. Putnal,* 75 F.3d at 198. This is not to say that an official's action is protected by qualified immunity unless the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness must be apparent. See *id.* The objective reasonableness of the public officials' actions is a matter of law for the courts to determine, however, the underlying historical facts precipitating the al-

leged conduct are material to reasonableness and concededly, may be in dispute. See *Mangieri v. Clifton,* 29 F.3d 1012, 1015–16 (5th Cir.1994); *see also* Lisa R. Eskow & Kevin W. Cole. *The Unqualified Paradoxes of Qualified Immunity: Reasonably Mistaken Beliefs, Reasonably Unreasonable Conduct and the Specter of Subjective Intent that Haunts Objective Legal Reasonableness,* 50 Baylor L.Rev. 869, 872–878 (1998).

■ In the case *sub judice,* Teitel has failed to establish that a clear constitutional right has been abrogated. Teitel, therefore, has failed to set forth with reasonable specificity claims that would meet either prong of the qualified immunity defense's two-part objective legal reasonableness test, since the second part of the test is necessarily predicated upon the first analysis, and, accordingly, there is no genuine issue as any material fact as to the merits of the defense. As Teitel's claims are barred by the qualified immunity of the Defendants, his allegations must be summarily dismissed.

### CONCLUSION

In light of Teitel's failure to demonstrate that there is a genuine dispute as to any material facts raised by his allegations of federal statutory or constitutional deprivations or violations of state common law, it is

**RECOMMENDED** that Defendants' First Amended Motion for Summary Judgment (Entry # 43) be **GRANTED.** Further, it is

**RECOMMENDED** that Teitel's claims be **DISMISSED** with prejudice.

The failure of the parties to file written objections to the proposed findings and recommendations within ten (10) days of the entry of this Memorandum and Recommendations, may bar an aggrieved par-

ty, except upon grounds of plain error, from attacking the proposed factual findings and legal conclusions, on appeal. See *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Services Automobile Assoc.*, 79 F.3d 1415, 1424 (5th Cir.1996)(*en banc*); see also *Crawford v. Falcon Drilling Co., Inc.*, 131 F.3d 1120, 1123–4 (5th Cir.1997); and, 28 U.S.C. § 636(b)(1)(C).

Dec. 10, 2002.